UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MYIA M,

|  |  |
|---|---|
| Plaintiff, | **DECISION** |
|  | **and** |
| v. | **ORDER** |
| KILOLO KIJAKAZI[1] Commissioner of | **21-CV-6265LGF** |
| Social Security, | (**consent**) |
|  |  |
| Defendant. |  |

_____

APPEARANCES:     LAW OFFICES OF KENNETH HILLER, PLLC
Attorneys for Plaintiff
KENNETH R. HILLER, and
ANTHONY JOHN ROONEY, of Counsel
6000 North Bailey Avenue
Suite 1A
Amherst, New York  14226

TRINI E. ROSS
UNITED STATES ATTORNEY
Attorney for Defendant
Federal Centre
138 Delaware Avenue
Buffalo, New York  14202
              and
KATHRYN L. SMITH
Assistant United States Attorney, of Counsel
100 State Street
Rochester, New York  14614
              and
CHRISTOPHER NELSON HURD
Special Assistant United States Attorney, of Counsel
Social Security Administration
Office of General Counsel
6401 Security Boulevard
Baltimore, Maryland  21235

---

[1] Kilolo Kijakazi became the Commissioner of the Social Security Administration on July 9, 2021, and pursuant to Rule 25(d) of the Federal Rules of Civil Procedure is automatically substituted as the defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On April 6, 2023, the parties to this action, consented pursuant to 28 U.S.C. §
636(c) to proceed before the undersigned.  (Dkt. 12).  The matter is presently before the
court on motions for judgment on the pleadings filed by Plaintiff on February 4, 2022
(Dkt. No. 9), and by Defendant on July 5, 2022 (Dkt. No. 11).

**BACKGROUND**

Plaintiff Myia M. ("Plaintiff"), brings this action under Title II of the Social Security
Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of
Social Security's final decision denying Plaintiff's application ("application") filed with the
Social Security Administration ("SSA"), on November 2, 2015, for Disability Insurance
Benefits under Title II of the Act ("SSDI" or "disability benefits").  Plaintiff alleges she
became disabled on July 7, 2015, based on attention deficit/hyper-activity disorder
("ADHD"), depression, pinched nerves, back problems, and problems eating and
sleeping.  AR[2] at 16, 194, 197.   Plaintiff's application was denied on December 23,
2015, AR at 16, 84-102, and at Plaintiff's timely request, AR at 103-04, on March 16,
2017, a hearing by video-conferencing commenced before Administrative Law Judge
("ALJ") Hortensia Haaverson ("ALJ Haaverson"), located in Alexandria, Virginia.  AR at
43-81 ("first administrative hearing").  From Rochester, New York, Plaintiff, represented
by Ida M. Comerford, Esq., as well as impartial vocational expert ("VE") Aimee Spinelli
appeared and gave testimony.  On July 6, 2017, ALJ Haaverson issued a decision

---

[2] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed by
Defendant on September 9, 2021 (Dkt. 7).

denying Plaintiff's claim ("the first ALJ decision"), AR at 13-36, which Plaintiff appealed to the Appeals Council, AR at 173-75.  On June 22, 2018, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the first ALJ decision the Commissioner's final decision at that time.  AR at 1-6.

On August 20, 2018, Plaintiff commenced an action seeking judicial review of the first ALJ decision, *McGowan v. Comm'r of Soc. Sec.*, 18-CV-6608MJP (W.D.N.Y.).  On March 17, 2020, United States Magistrate Judge Mark W. Pederson, acting with the consent of the parties, issued an Opinion and Order remanding the matter to the Commissioner for further proceedings including consideration of a consultative medical examiner's opinion and the employability assessments from the Monroe County Department of Human Services, as well as a new hearing.  *McGowan v. Comm'r of Soc. Sec.*, 2019 WL 6654151 (W.D.N.Y. March 17, 2020); 18-CF-6608MPJ (W.D.N.Y. March 17, 2020), Dkt. 15; AR at 699-707.

On September 22, 2020, a new hearing was held in Rochester, New York, via telephone before ALJ Michael W. Devlin ("ALJ Devlin" or "the ALJ").  AR at 632-648 ("second administrative hearing").  Plaintiff, represented by Kenneth Hiller, Esq., and Jeffrey Valentine, Esq., appeared and gave testimony, and testimony was also given by impartial VE Yaakov Taitz ("VE Taitz").  On January 29, 2021, ALJ Devlin issued a decision denying Plaintiff's claim ("the second ALJ decision").  AR at 609-31.  Because Plaintiff did not appeal the second ALJ decision to the Appeals Council, the second ALJ decision became the final decision subject to judicial review on March 31, 2021, *i.e.*, 61 days after the second ALJ decision was issued.  *See* 20 C.F.R. § 404.984.  On March

23, 2021, Plaintiff commenced the instant action seeking review of the second ALJ decision.

On February 4, 2022, Plaintiff filed a motion for judgment on the pleadings (Dkt. 9) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum").  On July 5, 2022, Defendant filed a motion for judgment on the pleadings (Dkt. 11) ("Defendant's Motion"), attaching the Commissioner's Memorandum in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Memorandum Pursuant to Local Rule 5.5 on Social Security Cases (Dkt. 11-1) ("Defendant's Memorandum"). Neither Plaintiff nor Defendant filed a reply.  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED, Defendant's Motion is GRANTED, and the Clerk of the Court is directed to CLOSE the file.


## **FACTS**[3]

Plaintiff Myia M. ("Plaintiff"), born on August 3, 1991, was 23 years old as of July 7, 2025, her alleged disability onset date ("DOD"), and 25 years old as of December 31, 2016, Plaintiff's date last insured ("DLI") for purposes of obtaining SSDI benefits.  AR at 194, 612, 614-15.[4]  Plaintiff attended regular classes in school and has a high school

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

[4] The court notes that after December 31, 2016, Plaintiff engaged in substantial gainful work activity and re-established her insured status as of October 1, 2018 through December 31, 2020.  ALJ Devlin, however, limited his consideration of the administrative record to the period from the alleged DOD to Plaintiff's DLI with regard to her disability benefits application, *i.e.*, December 31, 2016, because there was a gap in insured status.  AR at 612.  ALJ Devlin further commented that subsequent to this instant disability benefits application, Plaintiff filed another application for Supplemental Security Income ("SSI"), pursuant to Title XVI, on which Plaintiff was found disabled as of August 10, 2018.  *Id*.  Because the latter period of time for which Plaintiff was found eligible for SSI benefits does not overlap with the time period

education, having received a GED in 2013, and completed training for construction work in 2015.  AR at 62-63, 198, 306.  As of the first administrative hearing, Plaintiff lived in her aunt's home with her three young children, ages five, two and nine months for whom Plaintiff provides care.  AR at 60, 71, 206, 207.

Plaintiff has past relevant work experience in construction as a manual laborer, mostly doing roadwork but also some demolition work in buildings.  AR at 199, 650-51. Plaintiff was laid off on July 7, 2015, her asserted DOD, for poor attendance.  AR at 306.  Plaintiff has a driver's license, can drive, and can go out alone.  AR at 209.  It is undisputed that Plaintiff has degenerative disc disease ("DDD"), asthma, a depressive disorder, panic disorder, and intermittent explosive disorder.  AR at 197, 615.

Plaintiff prepares simple meals two or three times a week, and cleans, cooks, washes dishes, mops, sweeps, and folds laundry without any help, AR at 209, can handle money and pay bills, AR at 210, describes her social activities as spending time with family when she feels "up to it," AR at 210, and denies problems getting along with family, friends, neighbors or others.  *Id*. at 211.  Plaintiff describes her activities of daily living as walking up two flights of stairs carrying her baby.  AR at 215.  Plaintiff asserts her back impairment limits her ability to lift, stand, walk, sit, climb stairs, kneel, squat, reach and use her hands, AR at 211-12, while her ADHD at times prevents Plaintiff from completing tasks, *id*. at 212, but Plaintiff remains capable of following spoken and written instructions.  AR at 212-13.  Plaintiff reports no problems getting along with bosses, teachers, police, landlords, or others, and also denies ever losing a job because of problems getting along with others.  *Id*. at 213.  Plaintiff's back impairment

---

relative to the instant disability benefits application pursuant to Title II, the finding of eligibility on the Title XVI claim is irrelevant to the instant action.  *Id*.

also causes sharp, burning pain in her back and pain, the pain is exacerbated by

walking and moving around, and exacerbates her depression.  AR at 214-15.

According to Plaintiff, being around a lot of people triggers her anxiety, and when

Plaintiff experiences an anxiety attack, her physical pain increases.  AR at 215-16.

With regard to her asserted physical impairment, on July 1, 2016, Plaintiff

established care with Jordan Health for complaints of back pain where she was

prescribed ibuprofen (anti-inflammatory and analgesic), acetaminophen (analgesic), and

cyclobenzaprine (muscle relaxant), and referred to an orthopedic surgeon.  AR at 319-

21.  On July 25, 2016, Plaintiff was evaluated at University of Rochester Medical Center

("UMRC") Orthopedics and Rehabilitation clinic for her back pain and was referred to

physical therapy which she attended on September 29, 2016, when she showed some

restricted range of motion ("ROM") in her lumbar spine and right shoulder and was

given a home exercise program, AR at 427-79, and October 24, 2016, AR at 507-511,

but missed an appointment on October 11, 2016.  AR at 498-500.  An August 17, 2016

X-ray of Plaintiff's right shoulder showed no acute osseous or articular abnormalities,

AR at 405-06, and a lumbar MRI conducted September 1, 2016, showed DDD at L5-S1,

without significant central canal stenosis, and mild right and moderate left foraminal

stenosis.  AR at 355.

As regards Plaintiff's mental health impairments, on June 8, 2016, Plaintiff

commenced treatment at Evelyn Brandon Health Center where mental health counselor

Ellie Law ("MHC Law") assessed Plaintiff with post-traumatic stress disorder ("PTSD").

AR at 550-608.  Plaintiff reported to MHC Law that she lived with her parents in a

"chaotic" home environment until age 14 when she was removed from the home by

Child Protective Services ("CPS") because her parents were verbally and physically abusive.  AR at 556-57, 562.  Plaintiff then lived with her aunt until age 17.  AR at 557.  In 2013, Plaintiff was involved in a physical altercation with another woman for which Plaintiff was completing a five-year probation sentence.  *Id*. at 558.  Plaintiff also has a history of cannabis abuse but has not used cannabis since 2014, and completed a chemical dependency program in 2015.  AR at 555.  Plaintiff reported she lost her construction job because of scheduling issues and probation, and asserted she had some back pain, but "desire[d] to get back to work."  AR at 558.  On December 29, 2016, Plaintiff underwent a Comprehensive Psychological Evaluation at Healthy Moms' Program at Rochester Regional Health by Maya Burrows ("Burrows").[5]  AR at 542-50.

In connection with her disability benefits application, on December 9, 2015, Plaintiff underwent a consultative psychiatric evaluation by psychologist Kristina Luna, Psy.D. ("Dr. Luna") who assessed Plaintiff with no limitations in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule and learn new tasks, mildly limited in her ability to maintain attention, concentration, and make appropriate decisions, moderately limited in her ability to perform complex tasks independently, relate adequately with others, and appropriately deal with stress, adding that Plaintiff's difficulties are caused by her distractibility.  AR at 309 ("Dr. Luna's opinion").  Dr. Luna diagnosed Plaintiff with persistent depressive disorder, panic disorder, intermittent explosive disorder, and cannabis abuse, sustained, noting Plaintiff's physical medical condition included being two months pregnant, lower back pain, pinched nerve in back, and asthma.  *Id*.  Dr.

---

[5] Burrows's professional status is not specified in the record.

Luna recommended Plaintiff be referred for psychotherapy and reassessed in six months, *id*., her prognosis was "guarded given lack of consistency in attending treatment," and that Plaintiff required assistance managing funds because of her poor decision making. *Id*. at 309-10. Also on December 9, 2015, Plaintiff underwent a consultative internal medicine examination by Rita Figueroa, M.D. ("Dr. Figueroa"), who reported Plaintiff complained of lower back pain and bronchitis. AR at 312 ("Dr. Figueroa's opinion"). Dr. Figueroa's physical examination of Plaintiff was essentially normal, and an X-ray of Plaintiff's lumbosacral spine was canceled because Plaintiff was pregnant. AR at 312-14. Dr. Figueroa diagnosed Plaintiff with chronic back pain, history of bronchitis per Plaintiff's report, and early pregnancy, assessed Plaintiff's prognosis as fair, and stated Plaintiff should avoid exposure to smoke, dust, and any respiratory irritants. *Id*. at 315.

On August 25, 2016, orthopedic surgeon Addisu Mesfin, M.D. ("Dr. Mesfin") with URMC Orthopedics and Rehab, assessed Plaintiff's employability indicating that because of low back pain, Plaintiff could work 20 hours a week with the reasonable accommodation of lifting no more than 20 lbs., and that Plaintiff was to be reevaluated in six weeks. AR at 381-83 ("Dr. Mesfin's opinion"). Dr. Mesfin, however, did not complete anything else on the form including, *inter alia*, answering questions as to why Plaintiff was unable to work more than 20 hours a week, nor provided estimated temporal limitations as to Plaintiff's functionality over an eight-hour workday. *Id*.

On a Monroe County Department of Human Services Psychological Assessment for Determination of Employability completed on November 16, 2016, MHC Law reported Plaintiff has PTSD, postpartum depression, and borderline personality

disorder.  AR at 389-93.  ("MHC Law's assessment")  With regard to functional limitations, MHC Law, based on clinical observations, checked boxes indicating Plaintiff was moderately limited with regard to her capacity to regularly attend to a routine and maintain a schedule, but not limited in her capacity to follow, understand, and remember simple instructions and directions, to perform simple and complex tasks independently, to maintain attention and concentration for tasks, to maintain basic standards of hygiene and grooming, and to perform low stress and simple tasks.  *Id*.  MHC Law further opined Plaintiff could work for 15 hours a week with reasonable accommodations including low stress, minimal interactions, and flexible scheduling.  *Id*.

In further consideration of Plaintiff's disability benefits application, her medical records were reviewed by State Agency review psychologist O. Fassler, Ph.D. (Dr. Fassler""), who provided a Mental Residual Functional Capacity Assessment dated December 23, 2015, AR at 91-94 ("Dr. Fassler's assessment"), and State Agency disability examiner and single decision maker ("SDM")[6] D. Welch ("SDM Welch"), and Plaintiff was found to have DDD and affective disorders, and exertional limitations consistent with light work as defined by the regulations, but was not disabled.  AR at 85-96.

---

[6] "'SDMs are non-physician disability examiners who may make the initial disability determination in most cases without requiring the signature of a medical consultant.'"  *Mae B. v. Comm'r of Soc. Sec.*, 2021 WL 2643177, at *5 (W.D.N.Y. June 28, 2021) (quoting *Palmer v. Berryhill*, 2019 WL 1315052, at *3 (W.D.N.Y. Mar. 22, 2019)).  Further, "it is error for an ALJ to give weight to the opinion of a SDM."  *Id*. (citing *Curtis v. Astrue*, 2012 WL 6098258, at *6 (N.D.N.Y. Oct. 30, 2012), *report and recommendation adopted*, 2012 WL 6098256 (N.D.N.Y. Dec. 7, 2012) (noting that in 2010, the Chief ALJ for the Social Security Administration ("SSA") issued a memorandum citing SSA's Program Operations Manual System ("POMS") Instruction DI 24510.050C and instructing all ALJs that RFC determinations made by SDMs should not be afforded any evidentiary weight at the administrative hearing level)).

## DISCUSSION

### 1.      Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability

benefits when she is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's

determination that a claimant is not disabled if the factual findings are not supported by

substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g),

1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In

reviewing a final decision of the SSA, a district court "is limited to determining whether

the SSA's conclusions were supported by substantial evidence in the record and were

based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012) (internal quotation marks and citation omitted).  "Substantial evidence is more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's

function to make a *de novo* determination as to whether the claimant is disabled; rather,

"the reviewing court is required to examine the entire record, including contradictory

evidence and evidence from which conflicting inferences can be drawn" to determine

whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has

instructed . . . that the factual findings of the Secretary,[7] if supported by substantial

---

[7] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of
the Secretary of Health and Human Services in Social Security cases was transferred to the
Commissioner of Social Security, effective March 31, 1995.

evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

**2.     Disability Determination**

Although Plaintiff seeks only SSDI benefits, the definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial

gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  Further, it is the ALJ, and not a medical source, who is responsible for assessing a claimant's RFC.  20 C.F.R. §§

404.1546(c), 404.1527(d)(2), 416.946(c), and 416.927(d)(2).  In formulating an RFC,

"the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that

[is] consistent with the record as a whole.'"   *Schillo v. Kijakazi*, 21 F.4th 64, 78 (2d Cir.

2022) (quoting *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013) (brackets in

*Schillo*)).

### 3.    Analysis of Plaintiff's Arguments

In the instant case, ALJ Devlin found Plaintiff meets the insured status

requirements for SSDI through December 31, 2016, AR at 614-15, and that Plaintiff has

not engaged in substantial gainful employment ("SGA"), since July 7, 2015, the alleged

DOD, through December 31, 2016, the DLI.  *Id*. at 615.  ALJ Devlin found Plaintiff has

the severe impairments of asthma, persistent depressive disorder, panic disorder, and

intermittent explosive disorder because these impairments significantly limit Plaintiff's

ability to do basic work activities and have lasted or can be expected to last at least 12

months, AR at 615, but that Plaintiff's back pain, DDD, and cannabis use disorder are

non-severe because no evidence establishes such impairments have more than a

minimal effect on Plaintiff's ability to do basic work activities.  *Id*. at 615-16.  The ALJ

found that Plaintiff did not have an impairment or combination of impairments that met

or medically equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpt.

P, Appx. 1.  *Id.* at 616-18.  ALJ Devlin further found that through the DLI of December

31, 2016, Plaintiff retained the RFC to perform a full range of work at all exertional

levels but with nonexertional limits including avoiding concentrated exposure to fumes,

odors, dusts, gases, poor ventilation, and other respiratory irritants, Plaintiff can

understand, remember, and carry out simple instructions and tasks, occasionally

interact with co-workers and supervisors, little to no contact with the general public, and work in a low stress environment (*i.e.*, no supervisory duties, no independent decision-making required, no strict production quotas, and minimal changes in work routine and processes), and Plaintiff remains able to consistently maintain concentration and focus for up to two hours at a time. *Id*. at 618-24. Plaintiff was unable to perform her PRW as a construction laborer, *id*. at 624-25, and that that given Plaintiff's RFC, education, and ability to communicate in English, with transferability of skills irrelevant to the disability determination, the SSA's Medical-Vocation Rules set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"), supported a finding that Plaintiff was not disabled through her DLI, *id*. at 625, and that through the date last insured, there were jobs existing in significant numbers in the national economy that Plaintiff is capable of performing including as a hand packager and officer cleaner, both of medium exertion, as well as a price marker and routine clerk, both of light exertion. *Id*. at 625-26. Accordingly, the ALJ found Plaintiff not disabled as defined in the Act from the alleged DOD of July 7, 2015 through December 31, 2016, the date Plaintiff was last insured for SSDI eligibility. *Id*. at 626.

In support of her motion, Plaintiff argues that remand is warranted because at step two of the five-step analysis, the ALJ erred in failing to find Plaintiff's DDD was not a severe impairment, Plaintiff's Memorandum at 11-15, and in finding Plaintiff's RFC permitted her to perform work at all exertional levels, *id*. at 15, and further erred in his consideration of MHC Law's assessment regarding Plaintiff's mental health complaints. *Id*. at 15-21. Defendant argues ALJ Devlin's determination that Plaintiff's DDD was not severe was supported by substantial evidence in the record, including Dr. Figueroa's

uncontradicted medical opinion, Defendant's Memorandum at 6-14, and the ALJ was not required to accept MHC Law's assessment concluding that Plaintiff is not capable of working more than 15 hours per week. *Id*. at 14-16. There is no merit to Plaintiff's arguments.

Regarding Plaintiff's back impairment, although the ALJ did not consider the back impairment a severe impairment at step two, the ALJ nevertheless considered the limiting effects of Plaintiff's DDD and other nonsevere impairment of cannabis abuse in combination with Plaintiff's severe impairments. AR at 616. Significantly, a step-two error is harmless if the ALJ adequately addresses both severe and non-severe impairments in the RFC determination. *See Reices-Colon v. Astrue*, 523 Fed Appx. 796, 798 (2d Cir. 2013) (an ALJ's error in failing to properly identify an impairment as severe at step two was harmless where the ALJ identified other impairments as severe at step two and considered both severe and non-severe impairments at the subsequent steps). Here, at the subsequent steps of the analysis, ALJ Devlin specifically considered that despite Plaintiff's testimony that she first experienced back pain when she was 18 years old, and could only sit for 30 minutes, stand for 30 minutes, and walk for 10 minutes before she had pain, such testimony was inconsistent with Plaintiff's "somewhat normal level of daily activity and interaction" including preparing simple meals, cleaning, driving, and paying bills, AR at 619 (citing AR at 208-10, 309, and 313), and that although Plaintiff testified she required her daughter's help in caring for her niece and nephew, Plaintiff was able to care for her young children at home. *Id*. (citing AR at 207, 309). The ALJ further considered Dr. Mesfin's assessment which was consistent with the September 1, 2016 MRI of Plaintiff's lumbar spine revealing DDD at

L5-S1 without significant spinal canal stenosis, and mild right and moderate left foraminal stenosis, as well as physical examinations documenting tenderness to palpation in the back, upper body, arm and legs, decreased lumber spine range of motion, normal strength in the bilateral lower extremities, negative straight leg raise bilaterally, normal gait, and positive bilateral hamstring tightness, which the ALJ interpreted as "suggesting that the claimant's back pain does not cause more than minimal limitations."  AR at 622 (citing AR 355, 363-66, 371-74, 380-83, and 477-78). Accordingly, any error by the ALJ in failing to consider Plaintiff's back impairment severe at step two was, at most, harmless.

Nor did the ALJ err in rejecting Dr. Mesfin's assessment that Plaintiff could work only 20 hours a week with the reasonable accommodation of lifting only 20 lbs.  AR at 622 (citing AR at 381).  Rather, the determination that a disability benefits claimant can work less than full time is a determination that a claimant is disabled, *see* SSR[8] 96-9p, 1996 WL 374185 at *2 ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule."), and an opinion that a claimant is disabled is a determination specifically reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(d)(1) (opinions that a claimant is disabled is reserved to the Commissioner). Further, ALJ Devlin's conclusion that Plaintiff's DDD was not a severe impairment is supported by Dr. Figueroa's reported observations upon physically examining Plaintiff's

---

[8] "SSR" refers to "Social Security Rulings" which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted."  20 C.F.R. § 402.35(b)(1).

musculoskeletal system on December 9, 2015.  AR at 314.  Specifically, Dr. Figueroa

reported:

> Cervical spine shows full flexion, extension, lateral flexion bilaterally, and full
> rotary movement bilaterally.  No scoliosis, kyphosis or abnormality in thoracic
> spine.  Lumbar spine shows flexion 75 degrees, full extension, full lateral flexion
> bilaterally, and full rotary movement bilaterally.  The claimant had spasm across
> the lumbar spine.  SLR [straight leg raising][9] negative bilaterally.  Full ROM of
> shoulders, elbows, forearms, and wrists bilaterally.  Full ROM of hips, knees, and
> ankles bilaterally.  No evident subluxations, contractures, ankylosis, or
> thickening.  Joints stable and nontender.  No redness, heat, swelling, or effusion.

AR at 314.

Dr. Figueroa's diagnosis with respect to Plaintiff's back impairment was only "chronic

back pain," and Dr. Figueroa's medical source statement did not include any limitation

relative to Plaintiff's back.  AR at 315.  Dr. Figueroa's opinion is consistent with the

September 1, 2016 lumbar MRI showing DDD at L5-S1, without significant central canal

stenosis, and mild right and moderate left foraminal stenosis.  AR at 355.  Significantly,

the ALJ is permitted to rely on the opinion of a consultative examiner provided the

opinion is supported by and consistent with other evidence in the record.  *See Camille*

*v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) (consultative physician's report may

constitute substantial evidence).

    Moreover, even if the ALJ erred in finding Plaintiff retains the RFC for work at all

exertional levels, insofar as Plaintiff maintains the ALJ should have adopted the

exertional limitation of lifting no more than 20 lbs. as assessed by Dr. Mesfin, Plaintiff's

Memorandum at 15, such limitation is consistent with light work.[10]  Significantly,

---

[9] Unless otherwise indicated, bracketed material has been added.

[10] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects
weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it
requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing
and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

because two of the jobs ALJ Devlin identified Plaintiff as being able to work were at a light exertional level, including price marker and routing clerk, any error in finding Plaintiff retained the physical RFC for work of greater exertion was harmless such that a remand is not likely to change ALJ Devlin's determination that Plaintiff is not disabled. *See Zabala v. Astrue,* 595 F.3d 402, 410 (2d Cir.2010) (finding harmless error where the ALJ's consideration of a doctor's report would not have changed the ALJ's adverse determination).  Accordingly, the ALJ did not err by failing to consider Plaintiff's DDD a severe impairment at step two of the five-step analysis.

As for Plaintiff's mental health impairment, Plaintiff argues ALJ Devlin erred in his consideration of MHC Law's assessment, particularly Law's conclusion that Plaintiff can work only 15 hours a week.  Plaintiff's Memorandum at 15-21.  In opposition, Defendant argues the ALJ was not required to accept MHC Law's assessment concluding that Plaintiff is not capable of working more than 15 hours per week, Defendant's Memorandum at 14-16, and MHC Law's assessment that Plaintiff could work only 15 hours a week was inconsistent with the rest of the assessment finding Plaintiff with minimal functioning limitations.  *Id.*

MHC Law's assessment of November 21, 2016, is reported on a form issued by Monroe County Department of Human Services, a portion of which includes a series boxes for the preparer to check indicating the impact of Plaintiff's mental health impairment on Plaintiff's ability to perform several categories of mental work functions.[11]

---

[11] The court notes there is some overlap between the mental work functions listed on the form and the mental health functions referred to as the "paragraph B criteria" for mental impairments, including understanding, remembering and applying information, interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A)(2)(b) (providing four categories of functioning criteria used by the Commissioner to assess how a claimant's mental disorder limits her functioning).  Here, despite observing the "basic mental demands of competitive, remunerative, unskilled work" include the paragraph B criteria, Plaintiff's

MHC Law reports Plaintiff became her patient on June 8, 2016, and that although Plaintiff was scheduled for bi-weekly appointments, Plaintiff "had not been actively engaged.  Last attended an appointment on 9/6/16 prior to today."  AR at 390.  MHC Law listed Plaintiff's psychiatric diagnosis was PTSD, postpartum depression, and borderline personality disorder.  AR at 391.  Regarding Plaintiff's functional limitations as they related to employability, MHC Law checked boxes assessing Plaintiff as "moderately limited," *i.e.*, unable to function for 10 to 25% of the time, in the category of demonstrating the capacity to regularly attend to a matter and maintain a schedule, but with normal functioning in the remaining categories including demonstrating the capacity to follow, understand, and remember simple instructions and directions, perform simple and complex tasks independently, maintain attention and concentration for rote tasks, maintain basis standards of hygiene and grooming, and perform low stress and simple tasks.  *Id*.  Significantly, although MHC Law reported Plaintiff could work only 15 hours a week, she also reported the expected duration of the assessed limited work capacity as three months, *id*., strongly implying MHC Law did not expect Plaintiff's mental health impairment would be permanent or of long duration.  Nor does Plaintiff reference any caselaw supporting her novel argument that MHC Law's determination that Plaintiff can work only 15 hours a week, which is 37.5% of a 40-hour workweek, is equivalent to Plaintiff being off-task 62.5 % of the time during a 40-hour workweek which, in light of VE Taitz's hearing testimony that being off task more than 10% would preclude any competitive work, thus supports that Plaintiff is disabled.  AR at 20-21.  As with Dr. Mesfin's opinion, see Discussion, *supra*, at 16, although a disability benefits claimant is

---

Memorandum at 16-17, Plaintiff does not specifically argue Plaintiff's mental impairment meets the criteria for disability based on the paragraph B criteria.

disabled if unable to work the equivalent of a 40-hour workweek *see* SSR 96-9p, 1996 WL 374185 at *2, the determination that a claimant is disabled is specifically reserved to the Commissioner.  20 C.F.R. § 404.1527(d)(1).

Further, ALJ Devlin's conclusion that Plaintiff's mental health impairment is not disabling is supported by Dr. Luna's consultative opinion and Dr. Fassler's opinion based on the medical record and on which ALJ Devlin was permitted to rely in formulating Plaintiff's mental RFC.  *Camille*, 652 Fed.Appx. at 28.  *See also Petrie v. Astrue*, 412 Fed.Appx. 401, 405-06 (2d Cir. 2011) (the report of a consultative psychologist may constitute substantial evidence).  Dr. Luna's opinion, made after a psychological evaluation of Plaintiff on December 9, 2015, concluded that Plaintiff is not limited as to following and understanding simple directions and instructions, Independently performing simple tasks, maintaining a regular schedule, and learning new tasks, mildly limited as to maintaining attention and concentration and making appropriate decisions, and moderately limited with independently performing complex tasks, relating adequately with others, and appropriately dealing with stress, and that Plaintiff's difficulties are caused by distractibility.  AR at 309.  Dr. Luna also equivocally stated Plaintiff's psychiatric problems "*may* significantly interfere with the claimant's ability to function on a daily basis."  *Id*. (italics added).  ALJ Devlin gave Dr. Luna's opinion significant weight and found it consistent with Dr. Fassler's opinion that Plaintiff has some moderate limitations with some aspects of understanding and memory, sustaining concentration and persistence with detailed and complex instructions and tasks, social interactions, and adaptation.  AR at 92-93.  Dr. Fassler concluded that despite her mental impairments and limitations, Plaintiff "retains the ability to perform

the basic mental demands of competitive, remunerative, unskilled work," including working on a sustained basis, the ability to understand, carry out, and remember simple instructions, make judgments that are commensurate with the functions of unskilled work, make simple, work-related decisions, respond appropriately to supervisors and co-workers, and appropriately handle changes in a routine work setting, but should avoid work requiring "a great deal of interpersonal contact."  AR at 94.  ALJ Devlin gave significant weight to both Dr. Luna's opinion and Dr. Fassler's assessment because they are consistent with Plaintiff's response to treatment and mental status examinations documenting Plaintiff occasionally had depressed and irritable mood and anxious affect, cooperative behavior, occasional rapid speech, no cognitive defects, good attention and concentration, and average fund of knowledge, AR at 622-23 (citing AR at 307-08, 548, 564-65, 584, 590-91, 594-95), and that limiting Plaintiff to work without "a great deal of interpersonal contact" accommodates Plaintiff's history of violence and low frustration tolerance, *id*. at 623 (citing AR at 544, 557, 562, and 564-65).  Insofar as ALJ Devlin granted only "some" weight to MHC Law's assessment, rejecting Law's finding that Plaintiff was limited to working only 15 hours during a 40-hour workweek, the reasons expressed for granting "significant" weight to Dr. Luna's opinion and Dr. Fassler's assessment allow the court to "glean" ALJ Devlin's rationale for discounting MHC Law's assessment.  *See Moody v. Comm'r of Soc. Sec.*, 848 Fed.Appx. 470, 471 (2d Cir. 2021) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision." (internal quotation marks

omitted))).  ALJ Devlin's determination that Plaintiff was not disabled based on her mental impairment is thus supported by substantial evidence in the record.

Under the court's "very deferential standard of review," *Brault*, 683 F.3d at 448, the evidence in the administrative record cited by ALJ Devlin, including treatment notes, opinions, and MRI results, establishes "that no reasonable factfinder could [not] have reached the same conclusion," *i.e.*, that the ALJ's RFC assessment that Plaintiff, despite her impairments, was not disabled as of December 31, 2016.  *Schillo*, 31 F.4th at 78.  Accordingly, the second ALJ decision was supported by substantial evidence in the record, requiring Plaintiff's Motion be DENIED and Defendant's Motion be GRANTED.


## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is DENIED; Defendant's Motion (Dkt. 11) is GRANTED; the Clerk of Court is directed to CLOSE the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      September 5, 2023
            Buffalo, New York